IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | CHAPTER 11 |
|     JAMES ALBERT D'ANGELO, SR. AND | | |
|     CAROLYN MARIE D'ANGELO, | : | |
|         DEBTORS. | : | BANKRUPTCY NO. 11-14926-MDC |
| | : | |
| JAMES ALBERT D'ANGELO, SR. AND | : | |
| CAROLYN MARIE D'ANGELO, | : | |
|         PLAINTIFFS, | : | ADVERSARY NO. 12-00301-MDC |
|     V. | : | |
| J.P. MORGAN CHASE BANK, N.A., | : | |
|         DEFENDANT. | : | |

# MEMORANDUM

BY:  MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

## INTRODUCTION

On May 8, 2012, this Court held an expedited hearing (the "Expedited Hearing") to address a

Motion for a Preliminary Injunction [Docket No. 5] (the "Injunction Motion") filed by James Albert

D'Angelo, Sr. and Carolyn Marie D'Angelo (the "Debtors").  Pursuant to the Injunction Motion, the

Debtors requested that this Court issue a preliminary injunction enjoining J.P. Morgan Chase Bank, N.A.

("J.P. Morgan") from prosecuting a sheriff's sale scheduled for June 8, 2012 (the "Sheriff's Sale") of the

Debtors' residence located at 102 Pickwick Drive, Doylestown, Pennsylvania (the "Property").  The

Debtors contended that the sale is beyond the scope of this Court's August 4, 2011 Order ("Stay Relief

Order") granting J.P. Morgan relief from the automatic stay to proceed with enforcement of its equitable

lien against the Property.  In the alternative, the Debtors sought an injunction based upon the strong

likelihood that they would prevail in a recently filed adversary proceeding seeking to avoid J.P. Morgan's

liens on the Property pursuant to 11 U.S.C. §544.

At the close of the Expedited Hearing, this Court took the matter under advisement.  Since then, this Court has received two supplemental briefs from J.P. Morgan and a supplemental brief from the Debtors addressing matters raised by the parties at the Expedited Hearing.[1]  In addition, J.P. Morgan filed a letter advising that the Debtors had sought and obtained from the Bucks County Court of Common Pleas (the "Bucks County Court") a stay of the Sheriff's Sale.  The Debtors' counsel subsequently confirmed that the Bucks County Court has stayed the Sheriff Sale to September 14, 2011.

In the interim, J.P. Morgan filed a Motion to Dismiss Adversary Proceeding or, Alternatively, Abstention (the "Motion to Dismiss").  J.P. Morgan requested this Court dismiss the Amended Complaint (the "Amended Complaint") filed by the Debtors, pursuant to Fed. R. Civ. P. 12(b) and Fed. R. Civ. P. 19, or, in the alternative, exercise permissive abstention pursuant to 28 U.S.C. §1334(c)(1) and abstain from hearing the matters raised by the Amended Complaint in favor of adjudication by currently-pending state court proceedings.[2]  On May 19, 2012, the Debtors filed their response to the Motion to Dismiss (the "Response").  On June 5, 2012, this Court held a hearing to address the Motion to Dismiss (the "Dismissal Hearing").  At the Dismissal Hearing and after hearing arguments from the parties, this Court advised the parties that it would grant J.P. Morgan's Dismissal Motion and (1) dismiss the claims seeking to avoid the Equitable Lien for failure to state a claim, and (2) exercise permissive abstention and abstain from hearing the Debtors' claims relating to the validity of the Mortgage in favor of pending State Court Proceedings that involved the same issue and several other defendants.  The Court further advised as a result of the Debtors' failure to set forth a claim for avoidance of the Equitable Lien, let alone to

---

[1] This Court notes that not only did J.P. Morgan's Supplemental Brief dated May 16, 2012 address issues outside of the scope permitted by this Court, J.P. Morgan filed a Second Supplemental Brief dated May 25, 2012.  As provided by this Court's Judicial Practices and Procedures, "[p]arties desiring to submit post-hearing memoranda will be permitted to do so."  However, this Court will not address the matters raised by J.P. Morgan's Second Supplemental Brief because, as discussed below, they also do not implicate the grounds upon which this Court has based its decision.

[2] The actions are pending in the Bucks County Court of Common Pleas ("Bucks County Court") and include: (1) *JP Morgan Chase Bank Association v. James A. D'Angelo, Sr. and Carolyn D'Angelo*, Consolidated Case Nos. 2006-06047 (the "Foreclosure Action"); and (2) *James A. D'Angelo, Sr. and Carolyn D'Angelo, H/W v. JP Morgan Chase Bank, N.A., James A. D'Angelo, Jr., Mortgage First Lending Group, Harry M. Anthony, Citizens Services, Inc., Tonya Friend, and Michelle A. Sheridan*, Case No. 2007-00041-26-1 (the "Declaratory Judgment Action," collectively with the Foreclosure Action, the "State Court Proceedings").  Both the Foreclosure Action and the Declaratory Judgment Action were consolidated under Case Number 2006-06047 and remain pending in the Bucks County Court.

2

demonstrate a strong likelihood that they would prevail on such a claim, the Debtors' Injunction Motion would be denied.

This memorandum is consistent with this Court's bench ruling and is submitted to further expound upon the reasons for its ruling.

## FACTUAL AND PROCEDURAL HISTORY[3]

### A.    The Present Proceedings Before The Court

On April 9, 2012, the Debtors filed a complaint initiating this adversary proceeding. On the same day, the Debtors filed the Amended Complaint. The Amended Complaint contains one count and seeks to invalidate J.P. Morgan's interests in the Property pursuant to 11 U.S.C. §§544(a)(1), (2), (3) and (b)(1). The Debtors contend that J.P. Morgan's mortgage on the Property should be invalidated because, among other things, J.P. Morgan's predecessor-in-interest failed to comply with Pennsylvania law governing the notarizing and recording of mortgages as set forth in 21 P.S.A. §444. The Debtors also contend that an equitable lien granted to J.P. Morgan in the amount of $1,339,387.30 against the Property (the "Equitable Lien") and imposed by the Bucks County Court pursuant to an order dated April 11, 2011 (the "Lien Order") is avoidable. The Debtors contend, without reference to any factual or legal basis, that the Equitable Lien may be avoided because the "'equitable lien' arises only as a result of the presence of an allegedly-valid mortgage, and cannot stand if its underlying supportive mortgage cannot stand." Amended Complaint, ¶24. In their request for relief, the Debtors ask this Court to:

> (1) Declare the mortgage and any other claims or rights claimed by J.P. Morgan under the mortgage against the Plaintiffs, including any "equitable liens" invalid;

> (2) enjoin the MF Action, as it is based solely on the validity of this mortgage;

> (3) declare that J.P. Morgan has no valid claim in this case;

> (4) award the Plaintiffs their reasonable attorney's fees and costs for defending the invalid MF Action;

---

[3] In addition to the facts recited herein, this Court relies upon and incorporates its factual findings contained in *D'Angelo v. J.P. Morgan Chase Bank, N.A. (In re D'Angelo)*, Adv. No. 11-00744, 2012 WL 27541 (Bankr. E.D. Pa. Jan. 5, 2012).

(5) provide any other relief which this Court may deem necessary and proper to vindicate the Plaintiffs.

Amended Complaint, p. 4.

On April 15, 2012, the Debtors filed the Injunction Motion and requested that the Court consider the matter on an expedited basis.  On May 2, 2012, J.P. Morgan filed its Objection to Motion for Preliminary Injunction (the "Objection") opposing the issuance of an injunction and argued that (1) the Motion represented a request to re-impose the stay and was simply the Debtors' latest attempt to circumvent the Stay Relief Order, and (2) the Debtors failed to establish any of the requirements necessary for imposition of an injunction.

Both Debtors appeared and testified at the Expedited Hearing.  Mr. D'Angelo testified that neither he nor Mrs. D'Angelo had executed the mortgage dated August 11, 2005 (the "Mortgage"), issued against the Property.  Rather, he stated that his son, James A. D'Angelo, Jr. ("D'Angelo, Jr.") had forged his signature on the Mortgage.  He also testified that a deed dated August 11, 2005, transferring ownership of the Property from Mr. D'Angelo individually to a joint tenancy with his wife, Mrs. D'Angelo, was signed by D'Angelo, Jr. and therefore a forgery.  He testified that he learned of the Mortgage sometime shortly after it had been issued when advised by his homeowner's insurer that the premiums had increased to $6,000.00 as a result of the increased amount of the mortgage.  Although he knew of the Mortgage in 2005 and had discussed its issuance with D'Angelo, Jr., D'Angelo testified that he first took action regarding the Mortgage after being served with the notice of the foreclosure proceedings commenced by J.P. Morgan in 2006.  Thereafter, he sought the assistance of the local Sheriff and the Office of the United States Attorney to address the alleged forgeries.  Mr. D'Angelo also testified regarding the Debtors' ability to reorganize.  He testified regarding the Debtors' assets, income, expenses and proposed plan of reorganization (the "Plan").  Mr. D'Angelo testified that the Debtors would fund a Plan with a combination of future earnings and a loan secured by the Property.

Mrs. D'Angelo testified very briefly in support of the Motion.  She confirmed Mr. D'Angelo's testimony that neither had signed the Mortgage or Deed and that the signatures on both documents were

forgeries.  She did not testify regarding the Debtors' reorganization efforts or ability.  Both Debtors

testified that the signatures set forth on the retainer agreement with their present bankruptcy counsel

reflected their actual signatures.

J.P. Morgan did not call any witnesses in support of its Opposition to the Injunction Motion.

Instead, J.P. Morgan relied upon the testimony elicited from Mr. D'Angelo during cross-examination and

documents it submitted into evidence including, *inter alia*, (1) a copy of the Judgment Index relating to

the Lien Order, (2) J.P. Morgan's Memorandum in Support of Partial Summary Judgment, and (3) the

Lien Order.

At the close of the Expedited Hearing, the Debtors requested an opportunity to address the import

of *In re Funches*, 381 B.R. 471 (Bankr. E.D. Pa. 2008) and whether a debtor could utilize §544 to

"invalidate" an allegedly defective or void mortgage.  This Court granted the Debtors' request and

required the parties to submit briefs addressing *Funches* by May 16, 2012.  The parties submitted their

briefs addressing this issue.

Thereafter, this Court held the Dismissal Hearing.  This Court heard arguments from counsel for

both parties and received no documents into evidence.  At the close of the Dismissal Hearing, this Court

advised the parties that it would grant J.P. Morgan's Dismissal Motion for several reasons.  First, the

Amended Complaint failed to comply with the pleading requirements set forth by the U.S. Supreme Court

in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and

contained only conclusory statements.[4]  Second, this Court found that even if the Amended Complaint

was properly pled, the Debtors had failed to state a legal basis upon which they could avoid the Equitable

Lien.  Third, the relief sought by the Debtors including "invalidation" of the Mortgage and Equitable

Lien, were not remedies provided for under §544 of the Code.  In addition, the Court did not have the

authority to "invalidate" the Equitable Lien as such a remedy was barred by the *Rooker-Feldman* doctrine

---

[4] Debtors' counsel argued that the Amended Complaint necessarily satisfied applicable pleading requirements
because it is substantially the same as the complaint he filed initiating the proceeding memorialized in *Fisher, et al.
v. Advanta Finance Corp. (In re Fisher)*, 320 B.R. 52 (E.D. Pa. 2005).  This Court notes that *Fisher* was decided
prior to the Supreme Court's adoption of the heightened pleading requirements imposed by its decisions in *Twombly*
and *Iqbal*.

which precluded the Court from reviewing and/or overturning the state court judgment. Fourth, as for the Debtors' claim to avoid the Mortgage, the exercise of permissive abstention was warranted given that the validity of the Mortgage is the subject in the State Court Proceedings which have remanded by this Court. Further, that exact issue has been litigated by the parties for more than five years, continues to be litigated, and involves several other defendants, none of whom are parties to the present action and do not appear to be subject to this Court's jurisdiction. In addition, the Debtors sought and were granted approval by this Court to retain Mr. Gerace as special counsel in the State Court Proceedings. Finally, the Debtors would have the opportunity to seek avoidance of the Mortgage in this Court, if necessary, once the validity of the Mortgage has been decided.

The Court then advised the parties that the Debtors' Injunction Motion would be denied. The Court found that Debtors were not entitled to injunctive relief staying J.P. Morgan's execution of its Equitable Lien because they had failed to establish a likelihood of success on the merits of their avoidance of the Equitable Lien requiring the Court to deny the Injunction Motion.

**B.      The Prior Proceedings Before this Court**

The Amended Complaint and the Injunction Motion are the Debtors' fourth attempt in this Court to invalidate J.P. Morgan's interest in the Property. The Debtors' first attempt to have this Court review the legitimacy of J.P. Morgan's liens occurred in connection with the lift-stay litigation that occurred shortly after the Debtors commenced their bankruptcy case. On June 22, 2011, J.P. Morgan filed a petition in the Bucks County Court to hold the Debtors in contempt for failing to comply with the Lien Order. In response, the Debtors filed on June 22, 2011 (the "Petition Date") their petition for chapter 13 relief.[5] Shortly thereafter, J.P. Morgan filed a Motion for Relief from Stay dated July 7, 2011 (the "Lift-Stay Motion"). The Debtors filed their Response on July 25, 2011 (the "Lift-Stay Response"). On August 4, 2011, this Court held an evidentiary hearing to address the Lift-Stay Motion (the "Lift-Stay Hearing"). On the same day, this Court entered an order granting J.P. Morgan relief from the automatic

---

[5] The Debtors' bankruptcy case was subsequently converted to Chapter 11 on September 30, 2011 because the Debtors were not eligible for Chapter 13 relief.

stay to execute upon the Equitable Lien (the "Lift-Stay Order").  Pursuant to the Lift-Stay Order, this

Court ordered "J.P. Morgan is granted relief from the automatic stay pursuant to 11. U.S.C. §362(d)(1) to

execute its lien."[6]

On September 1, 2011, the Debtors made their second attempt to have this Court review the

legitimacy of J.P. Morgan's interests in the Property by filing a Notice of Removal, pursuant to 28 U.S.C.

§1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure, with respect to the State Court

Proceedings.  The Debtors later filed an Amended Notice of Removal dated September 7, 2011 (the

"Amended Notice").  The Amended Notice supplemented the original by explicitly identifying the

reasons why the Debtors believed the State Court Proceedings were within this Court's core jurisdiction.

The Debtors argued removal was proper because the subject matter of the State Court Proceedings is

within the scope of the several of the definitions of adversary proceedings as provided by Fed. R. Bankr.

P. 7001.  The Debtors also argued that the State Court Proceedings are within this Court's core

jurisdiction because the State Court Proceedings implicate "matters concerning the administration of the

estate."  Amended Notice, ¶ 22.  In support of their request for removal, the Debtors also argued that

"[t]here is no justification for forcing Debtors to continue incomplete and expensive state law litigation,

which they cannot afford."  Amended Notice, ¶ 24.

In response to the Amended Notice, J.P. Morgan filed on September 15, 2011, a Motion for

Remand (the "Remand Motion").  In the Remand Motion, J.P. Morgan argued that allowing removal of

the State Court Proceedings would be a waste of judicial resources because the State Court Proceedings

have been pending and litigated in state court for over five years.  J.P. Morgan also argued that comity

requires this Court to remand the State Court Proceedings because the Debtors' decision to remove the

State Court Proceedings was no more than an attempt to further delay J.P. Morgan's enforcement of its

rights as determined by the State Court Proceedings.

---

[6] The Court noted that the relief granted applied solely to the enforcement of the Equitable Lien and Lien Order and
did not allow for J.P. Morgan's prosecution of the Foreclosure Action.

On November 15, 2011, this Court held a hearing addressing J.P. Morgan's Remand Motion (the "Remand Hearing"). At the close of the Remand Hearing, this Court issued the Remand Order that granted J.P. Morgan's Remand Motion and set for consideration whether pursuant to 28 U.S.C. §1447(c) J.P. Morgan was entitled to attorneys' fees and costs. Because the issue had not been addressed by the parties in their papers filed with this Court, this Court requested the parties to submit post-hearing briefs addressing the issue. After the parties filed their respective briefs, this Court issued a Memorandum dated January 4, 2012, answering this question in the affirmative (the "Sanctions Memorandum"). This Court found that the Debtors "lacked a colorable basis for removal of the Actions" and that "the Debtors' attempt to remove the State Court Proceedings was a *bad faith* attempt to frustrate both J.P. Morgan's prosecution of the State Court Proceedings and the enforcement of this Court's Lift–Stay Order." *D'Angelo*, 2012 WL 27541, at *4 (emphasis added). On this basis, this Court granted pursuant to 28 U.S.C. §1447(c) J.P. Morgan's request for fees and costs in the amount of $4,715.00.

In addition to explaining this Court's rationale for awarding J.P. Morgan its attorneys' fees and costs, this Court used the Sanctions Memorandum to explain its ruling issued at the Remand Hearing. In its Sanctions Memorandum, this Court stated:

> J.P. Morgan has been determined in the Actions to be the holder of the Equitable Lien. Not only is this Court prohibited from reviewing a decision by a state court, this Court refuses to tolerate the Debtors' attempt to reargue arguments previously rejected by this Court. As this Court explained at the Hearing, bankruptcy courts when confronted by such procedural gamesmanship will invoke permissive abstention as provided by 28 U.S.C. §1334(c)(1) to remand the removed proceeding…

> This Court specifically found that the Debtors' attempt to remove the Actions was a patent attempt to relitigate the matters decided by this Court at the Lift-Stay Hearing and that denying remand would have the effect of rendering this Court's Lift-Stay Order a nullity.

*D'Angelo*, 2012 WL 27541, at *2. This Court further recognized that principles of comity between state and federal courts as well as the integrity of the judicial process warranted denial of the Debtors' attempt to remove the State Court Proceedings *D'Angelo*, 2012 WL 27541, at *3

(citing *S & S Family Partnership v. Abruzzo (In re Abruzzo)*, Adv. No. 99–14011, 1999 WL
1271761, at *4 (Bankr. E.D. Pa. Dec. 28, 1999)).[7]

On February 12, 2012, the Debtors made their third attempt to have this Court review the
legitimacy of J.P. Morgan's equitable lien by filing a complaint in Adversary Case No. 12-00211 seeking
substantially the same relief sought in the Amended Complaint.  In response, J.P. Morgan filed a Motion
to Dismiss and a Motion for Sanctions.  This Court held a hearing on April 3, 2012, to address J.P.
Morgan's Motion to Dismiss.  At the close of that hearing, this Court granted J.P. Morgan's Motion to
Dismiss without prejudice.  This Court did not base its ruling on any of the grounds raised by J.P. Morgan
in its motion to dismiss.  Rather, this Court dismissed that complaint without prejudice because it was
filed by David A. Scholl ("Scholl"), a counsel whose employment had not been requested by the Debtors
or approved by this Court.  Upon this Court's ruling on the Motion to Dismiss, J.P. Morgan voluntarily
withdrew its Motion for Sanctions.

On February 9, 2012, the Debtors filed an application to employ Richard J. Gerace (the "Gerace
Application") that sought this Court's approval of the appointment of Mr. Gerace as bankruptcy counsel
for the Debtors.  Three days later, Scholl, rather than the Debtors, filed an application dated February 12,
2012 (the "Scholl Application") requesting that the Court allow the Debtor to employ him as special
counsel for the Debtors ostensibly for the purpose of representing the Debtors in connection with
Adversary Case 12-00211.

In response to the Gerace Application, the United States Trustee filed an objection dated February
17, 2012, alleging that certain defects in the Gerace Application, including, but not limited to, certain
disclosures made in the Gerace Application conflicted with his 2016(b) Statement dated July 1, 2011, and
that Gerace appeared not be disinterested as required by 11 U.S.C §327(a).  In response to the Scholl
Application, the United States Trustee filed a separate objection also dated February 17, 2012, alleging
that Mr. Scholl's retention by the Debtors was duplicative and unnecessary, and provided no benefit to the

---

[7] The Debtors appealed the sanctions order and it is now pending in the United States District Court for the Eastern
District of Pennsylvania, Case No. 12-910 (the "District Court Appeal").

Debtors' estate.

J.P. Morgan also filed objections to both applications.  In its objection to the Gerace Application, J.P. Morgan argued that the Gerace Application should be denied to the extent it sought retention of Mr. Gerace on a *nunc pro tunc* basis.  In its objection to the Scholl Application, J.P. Morgan argued that the Scholl Application should be denied because of the risk of excessive and duplicative services that would increase the estates' administrative costs.

On April 3, 2012, this Court held a hearing to address the Gerace Application and the Scholl Application (together, the "Applications").  The various objections were resolved by the agreement of Mr. Gerace and Mr. Scholl to exchange roles and submit amended applications whereby Mr. Scholl would be retained as the Debtors' general bankruptcy counsel and Mr. Gerace would be retained to serve as the Debtors' special counsel for the purpose of representing the Debtors in the State Court Proceedings and in connection with the District Court Appeal.  On April 24, 2012, this Court held a hearing to address amended applications filed by Scholl and Gerace (the "Amended Applications").  At the close of this hearing, this Court advised the Debtors that it would approve the Amended Applications provided that Mr. Scholl and Mr. Gerace filed copies of their respective retainer letters with the Court and that Mr. Gerace return two undisclosed post-petition payments totaling $10,500.00 paid to him by the Debtors.  On May 3, 2012, and after receipt of Mr. Scholl's retainer letter, this Court issued an Order authorizing the employment of Mr. Scholl according to the terms set forth therein.  On June 4, 2012, after receipt of Mr. Gerace's retainer letter and his affidavit certifying that he had returned the previously undisclosed post-petition payments, this Court issued an Order authorizing the employment of Mr. Gerace according to the terms set forth therein.

**The State Court Proceedings**

On July 3, 2006, J.P. Morgan initiated the Foreclosure Action in the Bucks County Court.  In the Foreclosure Action, J.P. Morgan sought to foreclose on the Mortgage.  The Mortgage secured a note executed August 11, 2005 in the amount of $1,462,500 (the "Note").  Both the Note and Mortgage were originally executed in favor of Lancaster Mortgage Bankers and later assigned on September 14, 2006 to

10

J.P. Morgan via an assignment from EMC Mortgage Corporation.

In response to the Foreclosure Action, the Debtors initiated the Declaratory Judgment Action to obtain a declaration that the Note and Mortgage were invalid, void or otherwise unenforceable. The Debtors claimed, among other things, that (1) the signatures on the Mortgage and Note are forgeries and therefore not enforceable against the Debtors or the Property, and (2) the Mortgage is defective and unenforceable because it was not properly notarized or timely filed of record in violation of Pennsylvania law.

J.P. Morgan filed a counter-claim for unjust enrichment in response to the Debtors' claims in the Declaratory Judgment Action. J.P. Morgan then filed a motion for partial summary judgment on its unjust enrichment claim requesting the Bucks County Court to impose an equitable lien against the Property in the amount of $1,339,387.30 representing amounts paid to satisfy (1) a prior mortgage in the amount of $1 million on the Debtors' residence acknowledged as valid and enforceable by Mr. D'Angelo; (2) $256,250.00 in interest on the $1 million loan satisfied from the proceeds of the Note; (3) $12,501.88 for 2005 school taxes that were satisfied from the proceeds of the Note; and (4) $70,635.54 for school and real estate taxes for 2006 through 2010. The Bucks County Court granted J.P. Morgan's motion and entered the Lien Order granting to J.P. Morgan the Equitable Lien.

On April 26, 2011, the Debtors requested the Bucks County Court reconsider its Lien Order and that request was denied. The Debtors do not contest the fact that the Lien Order imposing the Equitable Lien was entered of record prior to the Debtors filing for bankruptcy relief. The portion of the Declaratory Action challenging the validity of J.P. Morgan's Note and Mortgage remains pending. [8]

Subsequent to entry of this Court's Lift-Stay Order, the Bucks County Court held a status hearing on October 31, 2011. This hearing was apparently concluded after the Bucks County Court ordered the Debtors to comply with the Lien Order by executing the amended mortgage and note as originally

---

[8] A bankruptcy court may take judicial notice of the matters of record in the state courts within its jurisdiction, *In re Soto*, 221 B.R. 343, 347 (Bankr. E.D. Pa. 1998), as well as take notice of docket entries in existing and prior bankruptcy cases filed by a debtor. *In re Madera*, Bky. No. 07-17296, 2008 WL 351446, at *1 & n. 1 (Bankr. E.D. Pa. Feb. 7, 2008); *In re Dawson*, Bky. No. 07-15741, 2007 WL 4190772, at *1 n. 3 (Bankr. E.D. Pa. Nov.20, 2007).

required by the Bucks County Court's Lien Order.  A second status hearing apparently occurred on

January 12, 2012 (the "January 2012 Hearing"), whereby the Bucks County Court was to determine

whether the Debtors had in fact complied with the Lien Order.  At the January 2012 Hearing, the Bucks

County Court determined that the Debtors had not complied with its Lien Order and found the Debtors to

be in willful contempt of that order.  As a sanction, the Bucks County Court awarded J.P. Morgan

$4,000.00 in fees and costs plus a $100 penalty for each day after January 12, 2012, that the Debtors

failed to comply with the Lien Order.[9]

As set forth in the Debtors' Injunction Motion, a Sheriff's Sale of the Property for June 8, 2012

had been scheduled in the State Court Proceedings.  Despite seeking injunctive relief from this Court, the

Debtors filed in the State Court Proceedings an Emergency Motion for Special Relief requesting the

Bucks County Court to stay the Sheriff's Sale, a motion that sought essentially the same relief requested

by the Debtors' Injunction Motion.  Before this Court had an opportunity to rule on the Debtors'

Injunction Motion, the Bucks County Court issued an order dated May 31, 2012, staying the Sheriff's

Sale until September 14, 2012, and requiring the Debtors post a bond in the amount of $15,000.00.

## DISCUSSION

### A.        The Standard for Dismissal Under Fed. R.C.P. 12(b)(6)

To prevent dismissal of a complaint for reasons of factual insufficiency under Fed. R.C.P.

12(b)(6) ("Rule 12(b)(6)"), "all civil complaints must now set out sufficient factual matter to show that

the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  In

deciding a Rule 12(b)(6) motion, a court must accept as true all factual allegations contained in the

complaint and construe all reasonable inferences drawn therefrom in the light most favorable to the

plaintiff.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); *Morse v. Lower Merion Sch. Dist*., 132 F.3d 902, 906

(3d Cir. 1997); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994); *Rogin

v. Bensalem Township*, 616 F.2d 680, 685 (3d Cir. 1980).  As explained by the Supreme Court:

---

[9] At the January 2012 Hearing, the Bucks County Court stated on the record that it had denied the Debtors' motion
for reconsideration of the Lien Order.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter,
> accepted as true, to "state a claim to relief that is plausible on its face." A claim has
> facial plausibility when the plaintiff pleads factual content that allows the court to draw
> the reasonable inference that the defendant is liable for the misconduct alleged. The
> plausibility standard is not akin to a "probability requirement," but it asks for more than a
> sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts
> that are "merely consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft*, 129 S.Ct. at 1949 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

Applying the standard enunciated by *Iqbal*, the Third Circuit in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) explained that its courts should conduct a two-part analysis to determine whether a claim survives the Rule 12(b)(6) motion. First, a court must distinguish between the factual and legal elements of the claim. Second, a court must determine whether based upon the facts alleged the plaintiff has a *plausible* claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949. A court may not accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Fowler*, 578 F.3d at 210 *quoting Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

### 1.    The Legal Framework for Debtors' Claim

The legal framework and statutory predicate for the Debtors' claims are §§544(a)(1), (2), (3) and 544(b)(1) of the Bankruptcy Code. Section 544, known as the "strong arm clause," allows the trustee as a hypothetical judgment lien creditor under §544(a)(1), a hypothetical unsatisfied execution creditor under §544(a)(2), and a bona fide purchaser for value under §544(a)(3), "to cut off unperfected security interests, secret liens and undisclosed prepetition claims against the debtor's property as of the commencement of the case." Collier on Bankruptcy ¶544.02[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). To state a claim under each of §544(a)'s subsection, a trustee, in this case the Debtors, is required, at a minimum, to set forth facts that, if true, would establish the unperfected status of the lien sought to be avoided. *Batt v. Scully*, 168 B.R. 541, 545 (D.N.J. 1994) (stating §544(a) "gives the Trustee the power to defeat any unperfected security interests as of the date of the filing"); *In re Best*, 417 B.R.

259, 277-78 (Bankr. E.D. Pa. 2009) (stating that the issue regarding plausibility of a trustee's §544(a)

claim is whether depending on the trustee's strong-arm powers the trustee would "have been able to

defeat or prime the property interest"); *High Strength Steel, Inc. v. Lozinski, et al. (In re High Strength*

*Steel, Inc.)*, 269 B.R. 560, 574 (Bankr. D. Del. 2001) ("a trustee is a secured creditor whose rights are

junior to security interests which were perfected prior to the petition date").  For a §544(b) claim, the

Debtors were required to allege the existence of an actual creditor with an allowable unsecured claim that

could have avoided the Liens.

> **2.      The Debtors Failed to State a §544(a) Claim for Avoidance of the Equitable Lien**

The Debtors may exercise their §544 strong-arm powers to avoid the Equitable Lien only if J.P.

Morgan's interest was unperfected as of the Petition Date.  *See, e.g., In re Bridge*, 18 F.3d 195, 204 (3d

Cir. 1994) (holding that trustee took property free and clear of unrecorded equitable lien); *In re Aultman*,

223 B.R. 481 (Bankr. W.D. Pa. 1998) (holding that recording of prepetition *lis pendens* precluded

operation of §544(a)(3) strong-arm powers).  In order to establish a plausible claim for avoidance of the

Equitable Lien, the Debtors were required to set forth facts that, if true, would establish that the lien was

unperfected.  The Debtors have not alleged any such facts.

The Amended Complaint is poorly plead.  It contains one count and on its face appears to seek to

avoid the Equitable Lien only.  However, it appears that the Debtors are seeking to "invalidate" two liens:

(1) the Mortgage against the Property; and (2) the Equitable Lien.[10]  The Debtors request that the Court

declare "the mortgage against the Plaintiffs, including any 'equitable liens,' invalid."  Complaint, p.4.  In

addition, Debtors' counsel stated at both the Expedited Hearing and the Dismissal Hearing that the

Debtors are seeking to invalidate both the Mortgage and the Equitable Liens (together, "the "Liens").

The Amended Complaint, whether it is attempting to avoid one or two liens, utterly fails to match

its factual allegations with the legal elements of its claims.  Not only does lumping these separate claims

into one count not constitute well-plead allegations, the presentation of the Amended Complaint impairs

---

[10] Properly written, the Amended Complaint should contain at least eight counts, one for each of the statutory
sections it relies upon multiplied by the number of liens it seeks to avoid.

judicial administration by frustrating both this Court's ability to determine whether it complies with Fed. R. Civ. P. 8 and J.P. Morgan's ability to answer it. *See, e.g., American Casein Company, et al. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010) (dismissing complaint without prejudice where pleading, as a whole, was conclusory, and failed clearly to match the allegations with the facts supporting the assertions). It is as if the Amended Complaint was purposefully drafted to exist as a moving target.

The Amended Complaint, even if properly pled, contains no factual allegation that the Equitable Lien was unperfected as of the Petition Date. Rather, the Debtors simply allege that the "'equitable lien' arises only as a result of the presence of an allegedly-valid mortgage, and cannot stand if its underlying supportive mortgage cannot stand." Amended Complaint, ¶24. Nothing in the Amended Complaint or among the evidence introduced by the Debtors at the Expedited Hearing or Dismissal Hearing establishes that the Mortgage and Equitable Lien are one in the same. The Equitable Lien is a separate lien that was issued as a result of a J.P. Morgan's request for partial summary judgment on its unjust enrichment claim resulting from satisfaction of the prior mortgage and payment of taxes and insurance. The Debtors' contend that the defects in the Mortgage – the failure to comply with 21 P.S. §444 – entitles them to avoid the Equitable Lien as unperfected. The Debtors have not alleged any set of facts or identified any applicable law from which this Court may infer that the Equitable Lien is dependent upon the Mortgage. Further, the Debtors have not cited and this Court has found no legal basis that stands for the proposition that a creditor may avoid the Equitable Lien as an unperfected lien as a result of alleged defects in the Mortgage. Having failed to allege any facts that, if true, would establish that the Equitable Lien was unperfected as of the Petition Date, this Court finds that the Amended Complaint is facially insufficient with regard to its claim for avoidance of the Equitable Lien.

### 3.     The Debtors Failed to State a Claim for Avoidance Under §544(b)

As set forth above, the Debtors' claim for avoidance under §544(b) is based upon the rights of an "actual creditor." Pursuant to §544(b), a trustee or, debtor-in-possession, "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by *a creditor holding an unsecured claim*…" 11 U.S.C. §544(b) (emphasis added). "The avoidance

power provided in section 544(b) is distinct from others because a trustee or debtor in possession can use this power *only if there is an unsecured creditor of the debtor that actually has the requisite nonbankruptcy cause of action.*"  *In re Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir. 2000) (emphasis added).  Therefore, to state a claim, the Debtors are required to identify, or, at a minimum, refer to such a creditor.  *Sender v. Simon*, 84 F.3d 1299, 1304 (10th Cir. 1996) (recognizing that §544(b) requires the trustee to establish that these is an actual unsecured creditor who could, pursuant to applicable state law, void the transfer); *Kaliner v. MDC Systems Corp., LLC*, Civ. No. 09-00005, 2011 WL 203872, at *7 (E.D. Pa. Jan. 20, 2011) (recognizing that trustee would have stated a valid §544(b) claim only if the complaint identified an actual unsecured creditor); *In re Yelverton*, Bky. No. 09-00414, 2010 WL 1688403 (Bankr. D. Colo. Apr. 22, 2010) (dismissing §544(b) claim where complaint "failed to identify an actual unsecured creditor that could avoid either the mortgage or foreclosure").  The Complaint is devoid of any reference whatsoever to any creditor, let alone an unsecured creditor that would have been entitled to void the Mortgage or Equitable Lien.  For this reason, the Complaint fails to state a valid §544(b) claim.

**4.     The Sufficiency of the Debtors' §544(a) Claim as applied to the Mortgage**

The Debtors allege that the Mortgage may be avoided because it contains forged signatures and was not properly notarized or recorded.  The Debtors contend that these defects, if proven to be true, would establish that the Mortgage is a nullity and can be "invalidated" under governing Pennsylvania law. *See*, *Bell v. Parkway Mortgage, Inc., et al. (In re Bell)*, 309 B.R. 139, 158 (Bankr. E.D. Pa. 2004) (recognizing that Pennsylvania law allows the avoidance of mortgages obtained by forgery); *Steel v. Snyder*, 295 PA 120, 128 (1929) ("If the mortgage was a forgery, its purported acknowledgment was false and fraudulent and gave the instrument no legal validity.").  *Fisher, et al. v. Advanta Finance Corp. (In re Fisher)*, 320 B.R. 52, 65 (E.D. Pa. 2005) ("Failure to record the mortgage with the time period renders the mortgage void and allows such a mortgage to be avoided by the trustee in a bankruptcy action."); *In re Batipps*, 460 B.R. 841, 845 (Bankr. E.D. Pa. 2011) (failure of the Mortgage to be notarized in presence of

party executing the mortgage is sufficient to render a mortgage void pursuant to §544.)[11].

The remedy sought by the Debtors – invalidation of the Mortgage – is of particular significance to this Court's consideration of whether the Debtors' Amended Complaint alleges a facially plausible §544 claim against the Mortgage because the provisions within §544 limit its application to "any *transfer of property* of the debtor or any obligation incurred by the debtor…"  11 U.S.C. §544 [emphasis added]. Several courts interpreting this language in the context of 21 P.S. §444 have recognized that §544's applicability to transfers renders it inapplicable to a debtor's attempt to challenge the validity of a mortgage based upon forgery, improper acknowledgment or a failure to record within the 90-day window. *In re Funches*, 381 B.R. 471, 494 (Bankr. E.D. Pa. 2008); *In re Myers*, 262 B.R. 445, 448 (Bankr. N.D. Ind. 2001).

In *Funches*, a procedurally and somewhat similar case to the proceeding now before this Court, Judge Frank addressed a mortgagee's motion to dismiss a complaint filed by a chapter 13 debtor attempting, among other things, pursuant to §544's strong-arm powers to avoid a mortgage based upon an alleged forged signature.  Judge Frank found the debtor's factual allegations regarding the mortgage transactions claim legally deficient noting that:

> The Debtor's problem is that the logical outcome of her contention that the mortgage documents were forged is that there was no "transfer" of property to avoid.  Under Pennsylvania law, a purported transfer based on a forgery *does not pass title*.  It would make no sense to seek to use §544 to avoid a transfer of property that did not occur.

*Funches*, 381 B.R. at 494 (emphasis added).  He further noted that:

> Once we realize that a forged mortgage does not transfer any kind of interest in property, it becomes clear that Plaintiffs' reliance upon the trustee's avoiding powers is misplaced.  There is a significant difference between avoiding a transfer and declaring that no transfer has ever occurred.

*Id.* at 494.

The Debtors' counsel contends that this Court cannot consider the *Funches* decision when determining whether §544 serves as a basis for "invalidating" the Liens.  Counsel asserts that the District

---

[11] There appears to be some disagreement as to whether under Pennsylvania law an improper acknowledgment, on its own, is insufficient to render a mortgage void.  In *Batipps*, Judge Frank outlines this disagreement and concludes that the proper reading of §444 is that it provides that an improperly acknowledged mortgage is "*per se* fraudulent."

Court's decision in *Fisher* is binding on this Court and that this Court must applied its rationale to the present dispute.[12]  In *Fisher*, the District Court found that the bankruptcy court erred when it found that an admittedly defective mortgage was not voidable under Pennsylvania law.  There, the District Court held that:

> [I]t is the eligibility to record a document, notifying prospective lien holders of a security interest, and the failure to achieve recordation eligibility, not the validity of the underlying contract between the parties, that allows a bankruptcy trustee to avoid a mortgage under Code.

*Fisher*, 320 B.R. at 67.

This Court finds that it does not need to decide whether to follow *Funches* or *Fisher* given that, as discussed below, it has decided to exercise permissive abstention and allow the validity of the Mortgage to be determined in the remanded State Court Proceedings where that precise issue is being litigated.

### B.    Permissive Abstention Is Appropriate On Debtors' Claims Regarding the Mortgage

Typically, courts decide whether or not to abstain from an entire case.  However, partial abstention permits a bankruptcy court to defer from hearing specific issues, including issues that are within this Court's core jurisdiction.  28 U.S.C. §1334(c); *Carr v. 19-21 N. George, Inc. (In re 19-21 N. George, Inc.)*, Adv. No. 10-00432, *7 (Bankr. M.D. Pa. May 13, 2011); *Lange, et al. v. Best (In re Best)*, 417 B.R. 259, 274 (Bankr. E.D. Pa. 2009) ("core claims as well as non-core claims are subject to permissive abstention."); *S&S Family Partnership v. Abruzzo (In re Abruzzo)*, Adv. No. 99-14011, 1999 WL 1271761, at *5 (Bankr. E.D. Pa. Dec. 28, 1999) (recognizing that fact that proceeding may be core does not outweigh other considerations in favor of remand).  And whether permissive abstention is appropriate is committed to a bankruptcy court's discretion.  *Lange, et al. v. Best (In re Best)*, 417 B.R. 259, 274 (Bankr. E.D. Pa. 2009).

---

[12]  This Court observes that within the Third Circuit district court decisions, while entitled to deference, are not binding on its bankruptcy courts.  *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371, (3d Cir.1991) (recognizing "that there is no such thing as 'the law of the district'"); *In re Wireless Corp., Inc.*, 384 B.R. 713, 723 n.62 (Bankr. D. Del. 2008); *In re Stafford Pool & Fitness Center*, 252 B.R. 627, 631 (Bankr. D.N.J. 2000).  In a multi-judge district, bankruptcy courts of that district are not bound by the pronouncements of a single district court judge.  *In re Schick*, 301 B.R. 170, 173 n.4 (Bankr. D.N.J. 2003); *In re Mendez*, 255 B.R. 143, 147 n.1 (Bankr. D.N.J. 2000); *In re Watson*, 190 B.R. 32, 35 (Bankr. E.D. Pa. 1995) (DAS).

Unlike mandatory abstention that requires this Court to find that each of six requirements are met in order for mandatory abstention to apply, the test for permissive abstention requires a bankruptcy court to employ a balancing test that considers the weight of numerous factors.  Generally speaking, §1334(c) authorizes a bankruptcy court to abstain from hearing matters within its jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for State law."  28 U.S.C. §1334(c). Courts of this district have recognized at least twelve separate factors that a court should consider when evaluating whether to apply permissive abstention.  These factors include:

(1)     the effect on the efficient administration of the estate;

(2)     the extent to which state law issues predominate over bankruptcy issues;

(3)     the difficulty or unsettled nature of applicable state law;

(4)     the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5)     the jurisdictional basis, if any, other than 28 U.S.C. §1334;

(6)     the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)     the substance rather than the form of an asserted "core" proceeding;

(8)     the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)     the burden on the court's docket;

(10)    the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11)    the existence of a right to a jury trial; and

(12)    the presence of non-debtor parties.

*In re Carriage House Condominiums L.P.*, 415 B.R. 133, 146-47 (Bankr. E.D. Pa. 2009).

Having examined the various factors, this Court finds that permissive abstention is warranted. The weighting of the factors is not a mathematical exercise, *see, e.g., In re Kessler*, 430 B.R. 155, 166 (Bankr. M.D. Pa. 2010), and this Court places substantially more weight on factors four and ten that,

together with the other considerations, warrant permissive abstention.  This Court is primarily concerned

that this adversary proceeding constitutes continued and unrepentant gamesmanship by the Debtors.  Not

only are the Debtors attempting to avoid this Court's prior determination that J.P. Morgan was entitled to

relief from stay to execute its Equitable Lien, the Debtors are also attempting to obtain an alternative

forum for review of the Lien Order.[13]  Concerns of comity weigh heavily in favor of permissive

abstention because the relief sought by the Debtors has a great potential to conflict with and/or render a

nullity the Lien Order and the Lift-Stay Order.  *In re Kessler*, 430 B.R. 155, 167 (Bankr. M.D. Pa. 2010)

(recognizing that concerns of comity caused by "a great potential to conflict with or render a nullity, an

underlying state court proceeding" weighed in favor of permissive abstention).

Moreover, throughout these proceedings, Debtors' counsel Mr. Gerace has freely admitted that

the Debtors filed for bankruptcy in order to avoid the adjudication of their claims against J.P. Morgan by

the Bucks County Court.  Where a party commences an adversary proceeding to obtain an alternative

forum to litigate identical issues that are the subject of state court litigation, courts will find abstention to

be appropriate.  *See, e.g., Lange, et al. v. Best (In re Best)*, 417 B.R. 259, 275 (Bankr. E.D. Pa. 2009)

(noting "it is probable that this adversary proceeding was commenced primarily to obtain a federal forum

for the same issues that make up the debtor's new matter in the state court litigation").  As recognized by

this Court when it addressed the Debtors' attempt to remove the state court proceedings, the Debtors

"lacked a colorable basis for removal of the Actions" and that "the Debtors' attempt to remove the State

Court Proceedings was a *bad faith* attempt to frustrate both J.P. Morgan's prosecution of the State Court

Proceedings and the enforcement of this Court's Lift–Stay Order."  *D'Angelo*, 2012 WL 27541, at *4.

Further, as evidenced by the fact that the Debtors requested the appointment and this Court

---

[13] As previously stated by the Court:

> J.P. Morgan has been determined in the Actions to be the holder of the Equitable Lien. Not only is
> this Court prohibited from reviewing a decision by a state court, this Court refuses to tolerate the
> Debtors' attempt to reargue arguments previously rejected by this Court.  As this Court explained
> at the Hearing, bankruptcy courts when confronted by such procedural gamesmanship will invoke
> permissive abstention as provided by 28 U.S.C. §1334(c)(1) to remand the removed proceeding…

*In re D'Angelo*, 2012 WL 27541, at *2.

approved the retention of special counsel to litigate the State Court Proceedings, the continuance of this

adversary proceeding will constitute a waste of estate assets. The precise issue that this Court must

decide – the validity of the Mortgage – is presently the subject of the State Court Proceedings where the

Debtors are represented by Mr. Gerace. The simultaneous litigation of this issue in the State Court

Proceedings constitutes a waste of judicial resources and constitutes a waste of estate resources. The

Debtors' estates will necessarily be harmed by the duplication of efforts by their special counsel in the

State Court Proceedings and their general counsel in this adversary proceeding. This Court finds that the

more prudent course will be to allow the Debtors to litigate in the State Court Proceedings their state law

defenses to the enforcement of J.P. Morgan's Mortgage. If successful, the Debtors may then return to this

Court to exercise their avoidance powers.

### C.       The Court Is Precluded from Invalidating the Equitable Lien

Even if the Debtors are correct that the Lien Order was based upon the Mortgage, this Court is

barred by the *Rooker-Feldman* Doctrine from determining that the Mortgage may be relied upon to

"invalidate" the Equitable Lien. As addressed by the Third Circuit, the *Rooker-Feldman* Doctrine bars

the losing party in a previous state court action from seeking "appellate review of the state-court

judgment, a task entrusted by statute solely to the Supreme Court." *Great Western Mining & Mineral

Co., Inc. v. Fox Rothschild LLP*, 615 F.3d 159, 164 (3d Cir. 2010). The doctrine posits that "federal

district courts and federal courts of appeals lack jurisdiction to review or reverse a state court judgment on

the merits." *In re James*, 940 F.2d 46, 53 (3d Cir. 1991) (holding that bankruptcy court lacked

jurisdiction to address merits of state court forfeiture proceeding). As recognized by *Great Western*, a

federal court lacks jurisdiction if (1) the federal plaintiff lost in state court; (2) the plaintiff complains of

injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit

was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."

*Great Western Mining & Mineral Co., Inc. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

The Debtors appear to be engaging in precisely the type of conduct prohibited pursuant to this

doctrine. The Debtors lost in state court. The Debtors complain of injuries, the imposition of the

Equitable Lien, caused by the Lien Order.  The judgment imposing the Equitable Lien was rendered prior to the Debtors' filing for bankruptcy relief.  Finally, the Debtors are inviting this Court to review and reject the Lien Order, the state court judgment imposing the Equitable Lien.  The Debtors had a full opportunity to raise the alleged infirmities in the State Court Proceedings and this Court must assume that when deciding to grant J.P. Morgan its Equitable Lien the state court considered the defenses now raised by the Debtors.  *Elkadrawy v. Vanguard Group., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (recognizing *res judicata* bars party from bringing claims that could have been brought as a part of prior action); *Olick v. House (In re Olick)*, Adv. No. 10-38, 2011 WL 2565665, at *4 (Bankr. E.D. Pa. Jun. 28, 2011) ("The doctrine of *res judicata* bars not only claims that were brought in a previous action, but also claims that could have been brought in that action arising from the same transaction or occurrence.").  "So long as the federal plaintiff effectively seeks to negate the force of the judgment, it is not possible for the federal court to exercise jurisdiction without exercising appellate review of the validity of the state court judgment." *In re Sabertooth, LLC*, 443 B.R. 671, 685 (Bankr. E.D. Pa. 2011).  Any ruling addressing this issue of whether the Equitable Lien is unenforceable due to the Mortgage's infirmities would necessarily have the effect of negating the Lien Order.  To the extent such a claim even exists, it appears that this Court would, pursuant to the *Rooker-Feldman* Doctrine, lack subject matter jurisdiction to hear the Debtors' claim.

Even if the Debtors' claim was not barred by application of the *Rooker-Feldman* Doctrine, this Court notes that the Debtors' claim regarding the invalidity of the Equitable Lien based upon the Mortgage's infirmities are also barred by issue preclusion.  *See, e.g., Easley v. New Century Mortg. Corp.*, 394 Fed. Appx. 946, 948-49 (3d Cir. 2010) (recognizing that party was barred from bringing a claim where that claim could have been brought as a counterclaim in the prior state court foreclosure proceeding).  The Debtors seek a determination by this Court that the Equitable Lien is not enforceable because the Mortgage contains their forged signatures.  Because the imposition of an equitable lien is an

equitable remedy,[14] the Debtors' allegations would have constituted a defense to the imposition of the

Equitable Lien.  In cases where a mortgage is invalid due to forgery, Pennsylvania courts have, on

occasion, refused to grant an equitable lien as a remedy.  *See, e.g., In re Fowler*, 425 B.R. 157, 208

(Bankr. E.D. Pa. 2010) (recognizing that prior to imposing an equitable lien Pennsylvania courts consider

the balance of equities, including the relative culpability and innocence of the parties, to determine

whether the imposition of an equitable lien is warranted); *Williard v. Millersburg Trust Co.*, 48 Pa. D.&C.

2d 149, 160 (Ct. Com. Pl. 1969) (finding that bank's negligence contributed to party's ability to submit a

forged mortgage precluded bank from being entitled to an equitable lien).

The record before this Court does not disclose whether in fact the Debtors raised the forgeries as

a defense in the State Court Proceedings.  Nothing in the record suggest that the Debtors did not have a

full opportunity to raise the alleged infirmities in the State Court Proceedings.  For this reason, this Court

must assume that when deciding to grant J.P. Morgan its Equitable Lien the state court considered the

defenses now raised by the Debtors.  *Elkadrawy v. Vanguard Group., Inc.*, 584 F.3d 169, 173 (3d Cir.

2009) (recognizing *res judicata* bars party from bringing claims that could have been brought as a part of

prior action); *Olick v. House (In re Olick)*, Adv. No. 10-38, 2011 WL 2565665, at *4 (Bankr. E.D. Pa.

Jun. 28, 2011) ("The doctrine of *res judicata* bars not only claims that were brought in a previous action,

but also claims that could have been brought in that action arising from the same transaction or

occurrence.").  The fact that the Debtors did not raise these defenses, or the fact that the Bucks County

Court found them unavailing, may not be remedied by this Court.

### D.    Debtors Failed to Satisfy the Requirements for Injunctive Relief

Because this Court finds that the Amended Complaint fails to state a plausible claim for

avoidance of the Equitable Lien, this Court will deny the Debtors' Injunction Motion.  Pursuant to the

---

[14] Under Pennsylvania law, liens are classified into three categories: (1) common law liens; (2) statutory liens; and (3) equitable liens.  An equitable lien[14] is an equitable remedy designed to provide redress in cases where the obligor's retention of certain property or the proceeds thereof would constitute unjust enrichment.  The creation of an equitable lien arises from proof of (1) an obligation; (2) a *res* to which the obligation attaches; and (3) an intent held by all the parties that the property is to serve as security for the obligation.  *Kern v. Kern*, 892 A.2d 1, 8 (Pa. Super. 2005); *Hoza v. Hoza*, 448 A.2d 100, 104 (Pa. Super. 1982) (setting forth evidentiary burden to establish existence of equitable lien).

Injunction Motion, the Debtors request this Court enjoin the Sheriff's Sale whereby J.P. Morgan seeks to execute upon the Equitable Lien. The Debtors have characterized this motion as a request pursuant to Fed. R. Bankr. P. 7065. It appears that the Debtors are requesting that the Court re-impose the stay and reverse the stay relief previously granted to J.P. Morgan. This would necessarily implicate the Court's authority under §105 of the Bankruptcy Code. Whether the Debtors request is based upon §105 of the Bankruptcy Code or Fed. R. Bankr. P. 7065 is not significant because in all cases invoking §105, a movant must, in accordance with the procedures set forth in Fed. R. Bankr. P. 7065, satisfy the applicable standards for injunctive relief. *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 701 (3d Cir. 1989).

To be eligible for §105 injunctive relief for re-imposition of the automatic stay, a party has the burden of establishing each of the following: (1) a substantial likelihood of success on the merits; (2) the party will suffer irreparable harm in the absence of injunctive relief; (3) the harm to the party outweighs the harm to its opponent that may be caused by injunctive relief; and (4) injunctive relief is in accordance with public interest. *Wedgewood Realty Group, Ltd.*, 878 F.2d at 701 (addressing standard for re-imposition of the automatic stay); *Miles v. Bancboston Mortgage Corp. (In re Miles)*, Adv. No. 92-0182, 1992 WL 48577, at *1 (Bankr. E.D. Pa. Mar. 4, 1992) (applying *Wedgewood* test to determine whether debtors were entitled to re-imposition of the automatic stay).[15] "The burden lies with the plaintiff to establish *every* element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) (emphasis added).

---

[15] The parties advocated using a different standard for evaluating whether the Debtor was entitled to injunctive relief. Rather than focus on whether the Debtor must establish a likelihood of success on the merits, the parties relied on case law that states a party has the burden of establishing (1) a reasonable likelihood of a successful reorganization; (2) the danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize; (3) the balance of the relative harm between the debtor and the entity which would be restrained; and (4) the balance between public interest in successful bankruptcy reorganizations and other competing societal interests. However, the cases cited by the parties each address the extension of the automatic stay to nondebtors. *See, e.g., In re Monroe Well Service, Inc.*, 67 B.R. 746, 752-3 (Bankr. E.D. Pa. 1986); *Official Comm. of Unsecured Creditors v. Bechtle (In re LaBrum & Doak, LLP)*, 237 B.R. 275, 306-7 (Bankr. E.D. Pa. 1999). This test differs from the test employed by this Court in that it looks to whether a debtor has established a likelihood of successful reorganization rather than, as this Court does herein, whether a debtor has established a likelihood of success on the merits. Because the Debtors do not seek to extend the automatic stay to nondebtors, this Court finds that application of this test to be inapplicable to its determination of whether the Debtors are entitled to reinstatement of the automatic stay to protect the interests of the Debtors' bankruptcy estate in the Property.

The Debtors have failed to allege facts that, if true, would render the Equitable Lien unperfected. It also appears that the Debtors are unable to allege such facts given that they did not challenge and appear to have acknowledged that the Equitable Lien is perfected.[16]  By failing to allege facts that would entitle the Debtors to avoid the Equitable Lien, the Debtors have necessarily also failed to establish substantial likelihood of success on the merits.  This Court need not address whether the Debtors have met their burden with regard to the remaining three elements of its claim for injunctive relief.  *See, e.g., Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 n.3 (9th Cir. 2011) (recognizing that when a movant seeking injunctive relief fails to establish one of its burdens a court need not address the others); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, (11th Cir. 2004) (stating that for injunctive relief to be available, "a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6)"); *S&M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992) (upholding denial of injunctive relief where lower court only determined that the movant had not demonstrated a likelihood of success on the merits); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (stating that the failure to demonstrate a likelihood of success on the merits "must necessarily result in the denial of a preliminary injunction"); *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989) (recognizing that a movant seeking injunctive relief must demonstrate a likelihood of success on the merits); *In re DBSI, Inc.*, 409 B.R. 720, 736 (Bankr. D. Del. 2009) (stating that where a movant has failed to demonstrate a likelihood of success on the merits a court may deny a request for injunctive relief without consideration of other factors).

---

[16] It appears that J.P. Morgan became the holder of a perfected judicial lien against the Property as of the date that the Lien Order was entered into the judgment index.  42 Pa. C.S.A. §4303(a); *Matter of Nelson Co.*, 959 F.2d 1260, 1264-65 (3d Cir. 1992) (finding that creditor's judicial lien was perfected upon entry and indexing of judgment); *Kedzuf v. Turetsky (In re Turetsky)*, 402 B.R. 663, 666 (Bankr. W.D. Pa. 2009) (granting creditor an equitable lien on debtor's real property and recognizing that said equitable lien would constitute a judicial lien within the meaning of §101(36)); *First Nat. Bank of Mercer County v. Allstate Distributors, Inc.*, 25 Pa. D.&C.3d. 329, 335 (Pa. Com. Pl. 1982) (finding that there was no need to file a *lis pendens* to provide notice of equitable lien "because the judgment index will provide adequate notice of any possible lien against the property.").

**CONCLUSION**

For the reasons stated above, this Court finds that (1) dismissal of the Debtors' claim to avoid the Equitable Lien is required because the Debtors have alleged no facts that if true would establish that the Equitable Lien was not perfected prepetition; (2) dismissal of the Debtors' claim to avoid the Equitable Lien under 544(b) is required because the debtor failed to identify any unsecured creditor with a right to exercise such right; (3) pursuant to 28 U.S.C. §1334(c), permissive abstention is warranted regarding the determination of the validity of the Mortgage; and (4) denial of the Debtors' request for any an injunction or re-imposing the stay is required because the Debtors have failed to state even a *prima facie* claim for avoidance of the Equitable Lien, let alone a substantial likelihood of success on the merits.

An Order consistent with this Memorandum will be entered.

Dated:  July 19, 2012

_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

David A. Scholl
Law Office of David A. Scholl
512 Hoffman Street
Philadelphia, PA  19148

Anne M. Aaronson, Esquire
Dilworth Paxson LLP
1500 Market Street, Suite 3500E
Philadelphia, PA  19102

Courtroom Deputy
Eileen Godfrey