IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | CHAPTER 11 |
|     JAMES ALBERT D'ANGELO, SR. AND | | |
|     CAROLYN MARIE D'ANGELO, | : | |
| DEBTORS. | : | BANKRUPTCY NO. 11-14926-MDC |
| | : | |
| JAMES ALBERT D'ANGELO, SR. AND | : | |
| CAROLYN MARIE D'ANGELO, | : | |
| PLAINTIFFS, | : | ADVERSARY NO. 12-00301-MDC |
| v. | : | |
| J.P. MORGAN CHASE BANK, N.A., | : | |
| DEFENDANT. | : | |

# **MEMORANDUM**

**INTRODUCTION**

    Before this Court for adjudication is the Motion to Dismiss Second Amended Adversary Complaint and for Abstention dated June 3, 2013 (the "Motion"), filed by J.P. Morgan Chase Bank, N.A. ("Defendant" or "J.P. Morgan") that requests this Court to dismiss the Second Amended Complaint dated May 17, 2013 (the "Amended Complaint"), filed by the Debtors, James A. D'Angelo, Sr. and Carolyn M. D'Angelo (the "Plaintiffs" or "D'Angelos"). On July 2, 2013, after appropriate notice, this Court held a hearing to address the Motion. At the close of the hearing, this Court dismissed the claims asserted by Counts One through Eight[1] of the Amended Complaint and took the sufficiency of the claim asserted by Count Nine under advisement. In Count Nine, the Plaintiffs seek to avoid as a preferential transfer pursuant to 11 U.S.C. §547(b) an equitable lien in favor of J.P. Morgan in the amount of $1,339,387.30 (the "Equitable Lien") against the Plaintiffs' residence located at 102 Pickwick Drive, Doylestown, Pennsylvania (the "Property") imposed by an Order dated April 11, 2011 (the "Lien Order"), entered by

---

[1] Counts One through Four sought avoidance of a mortgage dated August 11, 2005 (the "Mortgage"), pursuant to §§544(a)(1), (2), (3), and 544(b)(1). Counts Five through Eight sought avoidance of the Equitable Lien pursuant to §§544(a)(1), (2), (3), and 544(b)(1).

the Bucks County Court of Common Pleas ("Bucks County Court"). After consideration of the pleadings and the parties' arguments at the hearing, the Court now finds that the claim asserted by Count Nine to be implausible and will therefore dismiss the Amended Complaint in its entirety.

**BACKGROUND**

The Defendant requests this Court dismiss all counts asserted in the Amended Complaint or, in the alternative, abstain from hearing the matters raised by the Amended Complaint in favor of adjudication by currently pending state court proceedings. This adversary is the third of four adversary proceedings commenced by the Debtors against J.P. Morgan. Four separate written opinions rendered in both this Court and the District Court have been issued addressing the sufficiency of the Plaintiffs' claims.

- *D'Angelo v. J.P. Morgan Chase Bank, N.A. (In re D'Angelo)*, Adv. No. 11-744, 2012 WL 27541 (Bankr. E.D. Pa. Jan. 5, 2012) (Bankruptcy Court opinion imposing sanctions for Debtors' unreasonable removal of state court action (the "State Court Action") (the "Sanctions Memorandum")).

- *D'Angelo v. J.P. Morgan Chase Bank, N.A. (In re D'Angelo)*, 475 B.R. 424 (Bankr. E.D. Pa. 2012) (Bankruptcy Court opinion granting J.P. Morgan's first dismissal motion) (the "Dismissal Memorandum").

- *In re D'Angelo*, 479 B.R. 649 (E.D. Pa. 2012) (District Court opinion affirming award of sanctions) (the "District Court Sanctions Memorandum").

- *In re D'Angelo*, 491 B.R. 395 (E.D. Pa. 2013) (District Court opinion affirming Bankruptcy Court's order granting J.P. Morgan's first dismissal motion) (the "District Court Dismissal Memorandum").

The first adversary proceeding, Adv. No. 11-744 (the "First Adversary"), was commenced on September 1, 2011, when the Debtors filed a Notice of Removal attempting to remove the State Court Proceedings to this Court. On January 4, 2012, the First Adversary was dismissed by this Court upon its

2

finding that the Debtors lacked a colorable basis for removal. The Plaintiffs appealed this decision and this Court's determination was upheld by the District Court in the District Court Sanctions Memorandum.[2]

The second adversary proceeding, Adv. No. 12-211, was commenced on February 12, 2012 (the "Second Adversary"). On April 3, 2012, the Second Adversary was dismissed without prejudice because the employment of David Scholl, the attorney who initiated this proceeding, had not been previously approved by this Court and therefore lacked the authority to file a complaint on behalf of the Plaintiffs.

The third and instant adversary proceeding, Adv. No. 12-301, was commenced on April 9, 2012 (the "Third Adversary"). Shortly thereafter, on April 15, 2012, the Plaintiffs filed a Motion for a Preliminary Injunction (the "Injunction Motion") requesting this Court stay a sheriff's sale scheduled for June 8, 2012. On May 8, 2012, this Court held an evidentiary hearing to address the Injunction Motion. At the close of this hearing, this Court took the matter under advisement. Prior to this Court ruling on the Injunction Motion, the Court of Common Pleas granted the Plaintiffs' concurrent request to that court for a stay of the June 8 sheriff's sale.

On May 7, 2012, J.P. Morgan filed its first motion to dismiss, the Motion to Dismiss Adversary Proceeding or, Alternatively, Abstention dated May 7, 2012, seeking dismissal of the Plaintiffs' claims asserted in the Third Adversary (the "First Dismissal Motion"). On June 5, 2012, this Court held a hearing to address the First Dismissal Motion. At the close of the hearing, the Court issued an oral ruling granting the First Dismissal Motion. This Court in its Dismissal Memorandum later summarized its reasons by stating:

> At the close of the Dismissal Hearing, this Court advised the parties that it would grant J.P. Morgan's Dismissal Motion for several reasons. First, the Amended Complaint failed to comply with the pleading requirements set forth by the U.S. Supreme Court in

---

[2] In relevant part, the District Court wrote:

> This Court concludes that the Bankruptcy Court did not err in awarding fees. Because the Bankruptcy Court had, on August 4, 2011, granted JPM relief from the automatic stay to seek enforcement of the Equitable Lien in the Court of Common Pleas, Debtors lacked an objectively reasonable basis for removal.

District Court Sanctions Memorandum, 479 B.R. at 657.

3

> *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and contained only conclusory statements. Second, this Court found that even if the Amended Complaint was properly pled, the Debtors had failed to state a legal basis upon which they could avoid the Equitable Lien. Third, the relief sought by the Debtors including "invalidation" of the Mortgage and Equitable Lien, were not remedies provided for under §544 of the Code. In addition, the Court did not have the authority to "invalidate" the Equitable Lien as such a remedy was barred by the *Rooker-Feldman* doctrine which precluded the Court from reviewing and/or overturning the state court judgment. Fourth, as for the Debtors' claim to avoid the Mortgage, the exercise of permissive abstention was warranted given that the validity of the Mortgage is the subject in the State Court Proceedings which have remanded by this Court. Further, that exact issue has been litigated by the parties for more than five years, continues to be litigated, and involves several other defendants, none of whom are parties to the present action and do not appear to be subject to this Court's jurisdiction. In addition, the Debtors sought and were granted approval by this Court to retain Mr. Gerace as special counsel in the State Court Proceedings. Finally, the Debtors would have the opportunity to seek avoidance of the Mortgage in this Court, if necessary, once the validity of the Mortgage has been decided.

Dismissal Memorandum, 475 B.R. at 430-31.

As stated in the Dismissal Memorandum, this Court invoked the doctrine of permissive abstention and declined to address the Debtors' claims regarding the validity of the Mortgage. With regard to the Equitable Lien, this Court determined that the *Rooker-Feldman* divested this Court of jurisdiction to hear the Debtors' claims regarding the Equitable Lien's validity. Dismissal Memorandum, 475 B.R. at 442-43.

On the same day that this Court issued the Dismissal Memorandum, the Debtors filed a Notice of Appeal seeking review of this Court's decision to grant the First Dismissal Motion and to deny the Debtors' Injunction Motion. On the following day, the Debtors' filed an expedited motion requesting an injunction of the Sheriff's Sale that was then scheduled to occur on September 14, 2012. On August 15, 2012, this Court conditionally granted the Debtors' request and imposed an injunction of the Sheriff's Sale contingent upon the Debtors making monthly payments to J.P. Morgan in the amount of $10,100.

Two days later on August 17, 2012, the Debtors commenced their fourth adversary proceeding, Adv. No. 12-535 (the "Fourth Adversary"). The Fourth Adversary addressed identical subject matter to the previous three proceedings. The only difference was that the Debtors asserted a preference claim under 11 U.S.C. §547 as their basis for avoidance of the Lien Order. On September 14, 2012, this Court

4

entered an Order staying the Fourth Adversary while the appeal to the District Court of this Court's dismissal of the Third Adversary remained pending.

While the appeal to the District Court was pending, the Debtors filed a request with the District Court to dispense with the requirement that they make the $10,100 monthly payment. In an Order dated August 28, 2012, the District Court denied that request finding that the Debtors had not demonstrated a likelihood of success on the merits. Because the Debtors never made the monthly payment, the injunction of the Sheriff's Sale expired and the Sheriff's Sale was consummated on September 13, 2012. No bids were received and J.P. Morgan acquired the Property for $1,348, the amount of costs it incurred in executing on the Equitable Lien.

Pursuant to this Court's Order dated June 25, 2013, and as explained therein, this Court consolidated the Fourth Adversary proceeding with the instant adversary proceeding. Thereafter, the adversary proceeding remained in suspense as the parties awaited the decision of the District Court on the merits of the Debtors' appeal. On March 20, 2013, the District Court issued its Order affirming the Dismissal Memorandum. With regard to the Equitable Lien, the District Court affirmed this Court's dismissal of the Debtors' claim to avoid the Equitable Lien pursuant to §§544(a) and (b). In support of its §544(a) determination, the District Court observed: "[t]he equitable lien was issued on April 11, 2011, by the Bucks County Court of Common Pleas and *was recorded in the judgment index, and thus perfected, on April 12, 2011*." District Court Dismissal Memorandum, 491 B.R. at 404 (emphasis added). In support of its §544(b) determination, the District Court agreed that this claim should be dismissed because of the failure of the Debtors' to plead the existence of an unsecured creditor. District Court Dismissal Memorandum, 491 B.R. at 405. This adversary was then remanded to this Court for further proceedings consistent with the District Court Dismissal Memorandum.

With regard to the Debtors avoidance claims relating to the Mortgage, the District Court determined this Court did not abuse its discretion when permissively abstained. The District Court specifically rejected the Debtors' argument that a bankruptcy court may not abstain from considering the Debtors' §§544(a) and (b) claims. The District Court identified the following reasons cited by this Court

5

in support of its decision to abstain as illustrative of why abstention was appropriate:

- "the 'relief sought by the [d]ebtors has a great potential to conflict with and/or render a nullity' orders in the state proceedings…" District Court Dismissal Memorandum, 491 B.R. at 406.

- "the presence of a related state proceeding weighs in favor of permissive abstention…" District Court Dismissal Memorandum, 491 B.R. at 406.

- "the debtors' forum-shopping in this case also weighs in favor of permissive abstention." District Court Dismissal Memorandum, 491 B.R. at 406-07.[3]

- "the waste of judicial resources and estate assets resulting from simultaneous state-federal litigation also support permissive abstention in this case." District Court Dismissal Memorandum, 491 B.R. at 407.

The District Court also upheld this Court's determination that the *Rooker-Feldman* Doctrine precluded this Court's consideration of the Debtors' claims to avoid or to invalidate the Equitable Lien. District Court Dismissal Memorandum, 491 B.R. at 408. The District Court expressly rejected the Debtors' argument that *Rooker-Feldman* cannot apply to §544 action. As stated by the District Court:

> In this case, the Bankruptcy Court correctly noted that invalidating the equitable lien, a power not expressly provided under the cited provisions of the Bankruptcy Code, would necessarily negate the state court's lien order and *Rooker–Feldman* thus barred such a determination. The Bankruptcy Court properly concluded that it was barred by the *Rooker–Feldman* doctrine from disturbing the state court judgment.

District Court Dismissal Memorandum, 491 B.R. at 407-08.

After the issuance of the District Court Dismissal Memorandum, the Debtors returned to this Court and filed the Amended Complaint. The Amended Complaint contains nine separate counts. Counts One through Eight merely restate the claims that were the subject of this Court's Dismissal Memorandum. This Court's findings contained in the Dismissal Memorandum are now the law of the case. *See, e.g., Casey v. Planned Parenthood of Se. Pa.*, 14 F.3d 848, 856 (3d Cir. 1994) ("[l]aw of the

---

[3] Of note, the District Court recognized that the Debtors' admissions that they had filed for bankruptcy in order to avoid adjudication of the State Court Action "constitute a showing" that the Plaintiffs have engaged in forum shopping. District Court Dismissal Memorandum, 491 B.R. at 406.

case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'"). As stated by this Court at the hearing on the Motion and for reasons affirmed on appeal, this Court would not address arguments previously rejected by this Court. *See, e.g., Lange, et al. v. Best (In re Best)*, 417 B.R. 259 (Bankr. E.D. Pa. 2009); *S&S Family Partnership v. Ambruzzo (In re Abruzzo)*, Adv. No. 99-14011, 1999 WL 1271761, at *4 (Bankr. E.D. Pa. Dec. 28, 1999); *In re Tornheim*, 181 B.R. 161 (Bankr. S.D.N.Y. 1995). For these reasons, this Court dismissed Counts One through Eight of the Amended Complaint and took Count Nine under advisement.

Count Nine of the Amended Complaint reasserts the same theory of relief that was first asserted in the Fourth Adversary and asserts that the Plaintiffs may, pursuant to 11 U.S.C. §547(b), avoid the Lien Order (the "Section 547 Claim"). The Amended Complaint states that the Lien Order allowed "a transfer to the Defendant" of "funds in the amount of the [Lien Order] or the value of the [Property]…" Amended Complaint, ¶63. Of interest, Count Nine alleges that the transfer caused by the Lien Order occurred post-petition on September 14, 2012,[4] pursuant to a sheriff's sale.[5] Amended Complaint, ¶63.

In its Motion, J.P. Morgan argues that these allegations are insufficient to establish the existence of a transfer of an interest of the Plaintiffs in property within the meaning of §547(b). The Motion specifically states that the Amended Complaint does not allege the occurrence of a transfer within the 90-day preference period. Motion, ¶81. In response, the Plaintiffs characterize the Amended Complaint as alleging that the transfer occurred as of the entry of the Lien Order as a consequence of its "creation" of the Equitable Lien. Response, ¶10. After hearing the parties' arguments, this Court remained unable to determine whether these allegations regarding the nature of the alleged transfer could form the basis of a plausible preference claim and took the issue under advisement. Having fully considered the issues, this

---

[4] The Plaintiffs' filed a Chapter 13 petition on June 22, 2011. The Plaintiffs' bankruptcy case was later converted to a Chapter 11 case on September 30, 2011.

[5] This Court recognizes that §547(b) applies only to prepetition transfers and that, for this reason, the allegations that suggest the alleged transfer occurred postpetition may constitute a separate basis for dismissal. *In re G&G Investments, Inc.*, 458 B.R. 707, 711-12 (Bankr. W.D. Pa. 2011) (concluding that postpetition transfers cannot be avoided as preferences under §547(b)). Because this Court has determined that other reasons require the dismissal of the Plaintiffs' §547(b) claim, this Court has for the purposes of this memorandum construed the Amended Complaint to allege that the transfer in question occurred in the prepetition preference period.

Court is now able to render its decision.

## DISCUSSION

To prevent dismissal of a complaint for reasons of factual insufficiency under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), "all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In deciding a Rule 12(b)(6) motion, a court must accept as true all factual allegations contained in the complaint and construe all reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994); *Rogin v. Bensalem Township*, 616 F.2d 680, 685 (3d Cir. 1980). As explained by the Supreme Court:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft*, 129 S.Ct. at 1949 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)).

Applying the standard enunciated by *Iqbal*, the Third Circuit in *Fowler* explained the analysis to determine whether a claim survives the Rule 12(b)(6) motion. Initially, a court must distinguish between the factual and legal elements of the claim. All well-pleaded facts must be accepted as true. However, this Court is not obligated to afford any credence to legal conclusions. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (instructing courts to disregard legal conclusions). Once the factual allegations are separated from any legal conclusions, a court must then determine whether based upon the facts alleged the plaintiff has a *plausible* claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949. A court may not accept as true "threadbare recitals of the elements of a cause of action,

8

supported by mere conclusory statements." *Fowler*, 578 F.3d at 210 *quoting Ashcroft*, 129 S.Ct. at 1949.

To state a claim under 11 U.S.C. §547, a debtor must allege facts that, if true, would establish the following: (1) a transfer of an interest of the debtor in property; (2) the transfer was made to or for the benefit of a creditor of the debtor; (3) the transfer was made on account of an antecedent debt; (4) the transfer was made while the debtor was insolvent; (5) the transfer was made either (a) within 90 days of the petition date; or (b) if the creditor was an insider, within one year of the petition date; and (6) the transfer enabled the creditor to receive more than it would have received pursuant to a Chapter 7 liquidation. 11 U.S.C. §547(b)(5); *see also Rocco v. J.P. Morgan Chase Bank*, 255 Fed. Appx. 638, 641 (3d Cir. 2007) (listing statutory elements of §547(b) claim). In addition to the statutory requirements, some courts require a complaint to allege facts sufficient to establish (1) an identification of the nature and amount of each antecedent debt; and (2) an identification of each alleged preference transfer by (a) date, (b) name of debtor/transferor, (c) name of transferee, and (d) the amount of the transfer. *In re Universal Marketing, Inc.*, 460 B.R. 828, 835-36 (Bankr. E.D. Pa. 2011); *In re Harris Agency, LLC*, 465 B.R. 410, 415-16 (Bankr. E.D. Pa. 2011); *Tweeter Intellectual Property, LLC v. Mitsubishi Digital Electronics America Inc. (In re Tweeter Opco, et al.)*, 452 B.R. 150, 153 (Bankr. D. Del. 2011); *In re Valley Media, Inc.*, 288 B.R. 189, 192 (Bankr. D. Del. 2003). Because the additional requirements are not determinative of this Court's consideration of the legal sufficiency of Count Nine of the Amended Complaint, this Court will refrain from expressing its opinion on whether the Plaintiffs were required to include allegations relating to the additional elements of the Plaintiffs' §547 Claim.

This Court finds that the sufficiency of the §547 Claim (Count Nine) turns on whether the Amended Complaint contains allegations sufficient for this Court to infer the existence of a transfer of an interest of the Plaintiffs' in property, the first element of a §547(b) claim. Stated differently, the plausibility of the Plaintiffs' §547 Claim is dependent upon whether the Lien Order caused a transfer of the Plaintiffs' interest in property. Among its reasons for dismissal of the §547 Claim, J.P. Morgan argues that the Plaintiffs' Amended Complaint fails to allege sufficient facts to establish that the Lien Order caused a transfer of an interest of estate property. Section 547(b) states that "the trustee may avoid

9

any transfer of *an interest of the debtor in property...*" 11 U.S.C. §547(b) (emphasis added). In response, the Plaintiffs assert that the Lien Order, by recognizing the Equitable Lien, caused a transfer to J.P. Morgan an interest of the Plaintiffs in property.

In making this argument, the Plaintiffs fail to describe their specific interest that was transferred by the Lien Order. Implicit in the Plaintiffs' arguments is the assumption that the Equitable Lien consists of an interest of the Plaintiffs' in property. In evaluating the merits of the Plaintiffs' assumption, this Court relies upon the analysis of the Third Circuit in *Lewis v. Diethorn*, 893 F.2d 648 (3d Cir. 1990).[6] Unlike here, *Lewis* does not address the avoidance of a transfer that endowed a party with an equitable lien. Rather, to the extent the decision implicates the law of equitable liens, *Lewis* addresses whether a transfer to a creditor, who pursuant to a prior transfer outside the preference period is the holder of an equitable lien, "enables such creditor to receive more than such creditor would receive in a chapter 7 liquidation." *Lewis*, 893 F.2d at 650 (quoting §547(b)(5)). There, the trustee had brought a preference action to avoid a transfer that consisted of a payment in the amount of $15,000 made by a debtor to settle a creditor's claims, including the satisfaction of the creditor's equitable lien, asserted against it in pending state court litigation. *Lewis*, 893 F.2d at 649-50. Addressing the merits of the trustee's §547(b) claim, the Third Circuit found that the transfer could not be avoided as a preference because the transaction fell within §547(c)(1)'s statutory exception as being a contemporaneous exchange for new value. *Lewis*, 893 F.2d at 650. In the alternative, the Third Circuit held that the transfer could not be avoided as a preference because the transfer, despite the fact that the creditor's right to the equitable lien had not yet been confirmed by court order, would not have enabled the holders of an equitable lien to receive more than what they would have received in a Chapter 7 distribution as set required by 11 U.S.C. §547(b)(5).

---

[6] The Plaintiffs' failure to describe specifically the Plaintiffs' interests that were transferred by the Lien Order has plagued this Court's consideration of the sufficiency of the allegations of the Amended Complaint. Admittedly, the Plaintiffs' difficulties may be attributable to the rather murky nature of the law of equitable liens. *Arkwright Mut. Ins. Co. v. Bargain City, U.S.A., Inc.*, 373 F.2d 701, 706 (3d Cir. 1967) (recognizing that "the law governing the formal requirements of [an equitable lien's] creation is obscure"). To assist the parties and this Court navigate the issues presented, this Court issued an Order dated June 26, 2013 that required the parties to address the application of *Lewis* to the Plaintiffs' capacity to state a §547(b) claim. This Court hoped that the Third Circuit's analysis of the law of equitable liens would provide a helpful supplement to the parties' arguments.

10

*Id.*[7]  The Third Circuit explained:

> It does not matter that the Pennsylvania Court of Common Pleas never imposed an equitable lien, nor does it matter that the suit in the Pennsylvania court was for specific performance.  We find merely that in Pennsylvania *an equitable lien would have arisen as a matter of law*, and that payment on such a lien would have defeated the trustee's avoidance powers.

*Lewis*, 893 F.2d at 650-51 (emphasis added).

In the above-quoted language, the Third Circuit acknowledges that a party's right to an equitable lien consists of the right to be subrogated to the prior lien holder's interests, inclusive of its defenses, predates any order recognizing the existence of the equitable lien.  *Lewis*, 893 F.2d at 651 (summarizing Pennsylvania law of equitable liens affords the holder of an equitable lien to be "subrogated to other lien rights").[8]  Applying this logic to the Lien Order, this Court finds that the Lien Order, by recognizing J.P. Morgan's interest in the Equitable Lien, should be characterized as recognizing a transfer consisting of an equitable assignment of the prior lienholder's security interest.  *In re Bridge*, 18 F.3d 195, 201 (3d Cir. 1994) (recognizing that the holder of an equitable lien is subrogated "to the position of the lender whose lien was discharged"); *Lewis*, 893 F.2d at 651 (recognizing equitable lienholder is subrogated to prior lienholder's rights); *Dier*, 296 F. at 819 (3d Cir. 1924) ("An equitable lien springs from an equitable assignment.").  J.P. Morgan's right to step into the shoes of the prior lienholder arose at the time J.P. Morgan paid money that was used to discharge the prior mortgage lien and thereby caused the Plaintiffs to be unjustly enriched.  *Lewis,* 893 F.2d at 650.  At that time, J.P. Morgan became entitled to be subrogated to the rights of the holder of the prior mortgage lien.  Whether the Lien Order, by recognizing J.P. Morgan as the holder of the Equitable Lien, caused a transfer of the prior lienholder's interest or

---

[7] Other courts have criticized the reasoning that the transfers were made in exchange for benefit resulting from removal of the *lis pendens* and not the payment of an antecedent debt.  *See, e.g., In re Buffalo Molded Plastics, Inc.*, 344 B.R. 394, 403-4 (Bankr. W.D. Pa. 2006).  However, such criticism has been limited to the Third Circuit's application of §547(b)(2) and not its application of §547(b)(5).

[8] *Lewis*'s explanation of the law of equitable liens is consistent with the application of other Pennsylvania courts who have stated that an equitable lien consists of *an assignment* that permits a party to step into the shows of a prior lienholder.  *In re Dier*, 296 F. 816, 819 (3d Cir. 1924) ("An equitable lien springs from an equitable assignment."); *Gladowski v. Felczak*, 31 A.2d 718, 663-64 (Pa. 1943) (explaining that the remedy of an equitable lien is intended to subrogate a party to the position of the original lienholder); *1313466 Ontario, Inc. v. Carr*, 954 A.2d 1, 3-4 (Pa. Super. 2008) (recognizing that Pennsylvania law includes the doctrine of equitable subrogation).

11

merely recognized the prior occurrence of this transfer,[9] that transfer involved an assignment of the prior lienholder's rights to J.P. Morgan.[10]

To the extent that the Lien Order may be read as transferring to J.P. Morgan the Equitable Lien, this transfer therefore does not implicate an interest of the Plaintiffs in property. The transfer entailed the assignment of the interests of the prior mortgage holder, an interest in which the Plaintiffs retained no rights, to J.P. Morgan in exchange for J.P. Morgan's satisfaction of the prior mortgage holder's lien. *See, e.g., In re Halabi*, 184 F.3d 1335, 1337 (11th Cir. 1999) (recognizing that the assignment of a mortgage does not involve the transfer of an interest of the debtor in property); *In re Kunze*, 459 B.R. 468, 472-73 (Bankr. D. Kan. 2011) (same). The Plaintiffs were not even parties to the alleged transfer. The alleged transfer involved the assignment of an interest of a creditor of the Plaintiffs to another of the Plaintiffs' creditors. The transfer relied upon the Plaintiffs to state their §547 Claim did not involve transfer of an interest of the Plaintiffs in property. As a matter of law, the Plaintiffs cannot allege facts that would establish that the transfer they seek to avoid involved an interest of the Plaintiffs in property.

---

[9] Consistent with this Court's prior determinations, the timing of the transfer is not at issue. Outside of the bankruptcy context, the transfer may be said to have occurred at the time the indebtedness owed to the prior lienholder was paid off. *See, e.g., In re Turetsky*, 402 B.R. 663, 665-66 (Bankr. W.D. Pa. 2009) (holding that the date of the equitable lien relates back to the Debtor's receipt of the benefit entitling the creditor to an equitable lien); *In re Cedar Funding, Inc*., 398 B.R. 346, 351 (Bankr. N.D. Cal. 2008) ("Once recognized, an equitable lien is effective back to the time of the transaction or conduct that created it."). However, the Lien Order caused the perfection of the Equitable Lien. District Court Dismissal Memorandum, 491 B.R. at 404 (recognizing that J.P. Morgan's Equitable Lien was perfected at the time the Lien Order was indexed). The Lien Order therefore fixes the timing of the transfer as being "made" within the 90-day preference period. 11 U.S.C. §547(e)(2)(B) (defining when a transfer is "made" to be the time of perfection if perfection occurs more than 30 days after the transfer); *see also Provident Hosp. & Training Ass'n v. GMAC Mortg. Co. of Pa.*, 79 B.R. 374, 378-79 (Bankr. N.D. Ill. 1987) (recognizing that under nonbankruptcy law perfection does not involve a transfer of a debtor's interest in property).

[10] This Court's understanding of the Lien Order as recognizing the equitable assignment of the prior lienholder's interest to J.P. Morgan is reinforced by the terms of the Lien Order. In addition to recognizing J.P. Morgan as the holder of the Equitable Lien, the Lien Order ordered the Plaintiffs to execute an amended and restated note and mortgage effective August 11, 2005. Lien Order, ¶2. According to this Court's understanding of applicable Pennsylvania law, the Lien Order therefore accomplished two ends: (1) the perfection of the transfer of the prior lien holder's existing interest to J.P. Morgan; and (2) the transfer of a new security interest from the Plaintiffs to J.P. Morgan. The former recognized an equitable assignment, a transfer of an interest of the prior lienholder to J.P. Morgan. Whereas, the latter would have caused the transfer of an interest of the Plaintiffs to J.P. Morgan.

**CONCLUSION**

From this Court's review of applicable law, this Court has determined that the Plaintiffs cannot allege facts that would establish that the transfer that conferred upon J.P. Morgan its interest in the Equitable Lien involved an interest of the Plaintiffs in property. For this reason, this Court will dismiss with prejudice Count Nine of the Amended Complaint and grant the Motion in its entirety.

Dated: February 21, 2014

MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE